UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW McMASTERS, DIONTE PALMER, JOYVITA WRIGHT, JONTE JOHNSON, and SAMMY WILLIAMS, | ) ) ) ) ) ) | CASE NO. 5:22-cv-107 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| CAPTAIN FRIEDT TOWER SERVICES, LLC and JASON FRIEDT, | ) ) ) | |
| DEFENDANTS. | ) | |

Presently before the Court is the motion of plaintiffs for the entry of default judgment against defendants and an award of damages, attorney's fees, and costs, pursuant to the Fair Labor Standards Act ("FLSA"). (Doc. No. 11.) The motion is unopposed. For the reasons that follow, default judgment is granted in favor of plaintiffs and against defendants on plaintiffs' federal wage and hour claims, and plaintiffs are awarded damages, attorney's fees, and costs as set forth below.

I. **BACKGROUND**

Defendant Captain Friedt Tower Services, LLC ("Captain Friedt Tower") is an Ohio-based corporation with offices located in Akron, Ohio. Defendant Jason Friedt ("Friedt") is the president, co-owner and/or principal of Captain Friedt Tower. (Doc. No. 1 (Complaint) ¶¶ 7–8.) At all times relevant to the complaint, Captain Friedt Tower was an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r). (*Id.* ¶ 15.)

Plaintiffs are former employees of Captain Friedt Tower, whose primary duties involved

performing manual labor "on projects located in Ohio for the construction of cell phone towers and other telecommunication services for interstate and international clients and maintenance of [d]efendants' properties located in Ohio." (*Id.* ¶¶ 1, 16–17, 39, 60, 81, 102.) Plaintiff Matthew McMasters ("McMasters") was hired by defendants on January 18, 2021, as a manual laborer, at an agreed hourly rate of $18.00. (*Id.* ¶¶ 17–18.) Between January 18, 2021 and February 19, 2021, he worked approximately 248 hours and 15 minutes for defendants, logging between 40 and 60 hours per week. (*Id.* ¶¶ 29, 33.) Despite being non-exempt from the overtime requirements of the FLSA, McMasters did not receive any overtime compensation and was only paid a total of $964.00 for his work in violation of the minimum wage provisions of the FLSA and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). (*Id.* ¶¶ 28, 30, 33–34.) His complaints to defendants regarding his inadequate pay went unanswered, and he resigned his employment on February 19, 2021. (*Id.* ¶¶ 35–38.)

Plaintiff Jonte Johnson was hired by defendants at the same time as McMasters as a manual laborer at an hourly rate of $12.00. (*Id.* ¶¶ 103–05.) He was non-exempt from the overtime requirements of the FLSA and was not paid overtime at a rate of one and one half times his regular rate of pay when he worked in excess of 40 hours. (*Id.* ¶¶ 113–16.) In fact, he did not receive any compensation for the work he performed for defendants from January 2021 through February 2021. (*Id.* ¶ 117.) Like McMasters, Johnson complained about the failure to pay him but his complaints were disregarded by defendants. (*Id.* ¶ 119.) When he discovered that other employees were treated in the same manner by defendants, he self-terminated his employment. (*Id.* 121–22.)

Plaintiffs Dionte Palmer ("Palmer"), Sammy Williams ("Williams") and Joyvita Wright ("Wright") were hired at roughly the same time by defendants as manual laborers in late-July and

early August 2020[1] and were each promised an hourly wage of $12.00. (*See* Doc. No. 11-2 (Declaration of Joyvita Wright) ¶ 7; Doc. No. 11-3 (Declaration of Sammy Williams) ¶ 7; Doc. No. 12 (Declaration of Dionte Palmer) ¶ 7; *see* Doc. No. 1 ¶¶ 40–42, 61–62, 82–83.) Each man was non-exempt from the overtime requirements of the FLSA and regularly worked in excess of 40 hours per week. (Doc. No. 1 ¶¶ 50–52, 71–73, 92–94.) Despite being eligible to receive overtime pay, these men did not receive overtime compensation from defendants. (*Id.* ¶¶ 53, 74, 95.) Like Johnson, they did not receive any compensation for their work for defendants in violation of the minimum wage provisions of the FLSA and OMFWSA. (*Id.* ¶¶ 54–55, 75–76, 96–97.) Defendants terminated Wright, Williams, and Palmer after they complained about not being paid. (*Id.* ¶¶ 58–59, 79–80, 100–01.)

On January 20, 2022, plaintiffs filed the present action in federal court, raising claims under the FLSA and the OMFWSA for failure to pay overtime and minimum wages, and under the Ohio Prompt Payment Act ("OPPA"), Ohio Rev. Code § 4113.51, for failure to pay wages in a timely fashion. (*See generally* Doc. No. 1.) While plaintiffs initially pursued this matter as a collective action, they subsequently elected to "abandon collective relief in this matter in favor of receiving judgment solely on their individual claims." (Doc. No. 11, at 1.)

On February 22, 2022, plaintiffs perfected service upon defendants. (Doc. No. 4 (Return of Service by Clerk).) Defendants failed to answer the complaint. Instead, on May 13, 2022,

---

[1] Throughout plaintiffs' filings on the docket, "2020" and "2021" are used interchangeably to refer to the year in which Palmer, Williams, and Wright worked for defendants. (*See, e.g.*, Doc. No. 1 ¶¶ 40, 56, 61; Doc. No. 11-3 ¶ 3.) The Court finds that the most consistent reading of the record, which includes the representations of counsel in the default motion, is that these men were employed by defendants in 2020. (*See* Doc. No. 11, at 4.) In fact, the Court encountered numerous typographical, citation, and computational errors in the plaintiffs' filings that made it considerably more difficult to address plaintiffs' motion and had the effect of requiring the Court to expended additional resources to do so. Counsel is cautioned to more carefully review his filings in the future.

defendant Friedt submitted a written correspondence, presumably on behalf of defendants, advising that "[d]ue to lack of funds, available work and impact of Covid on supplies needed to conduct business especially last two years, CAPTAIN FRIEDT TOWER SERVICES LLC has ceased operations 2/15/22." (Doc. No. 5.) The letter directed the Clerk to "update [her] records accordingly." (*Id.*)

On May 13, 2022, plaintiffs applied to the Clerk for entry of default against defendants, and the Clerk entered default on May 27, 2022. (Doc. No. 6 (Application for Default); Doc. No. 7 (Entry of Default).) Plaintiffs' motion for default judgment followed on August 1, 2022, seeking actual and liquidated damages, attorney's fees, and costs. (*See* Doc. No. 11.)

Plaintiffs' motion is supported by the declarations of plaintiffs (Doc. No. 11-1 (McMasters), Doc No. 11-2 (Wright), Doc. No. 11-3 (Williams), and Doc. No. 12 (Johnson); pleadings and other documents from related cases involving defendants (Doc. Nos. 11-5 to 11-8); and the State of Ohio Certificate of Incorporation for Captain Friedt Tower Services LLC. (Doc. No. 11-10.) Additionally, plaintiffs have included a declaration from their attorney attesting to damages and the attorney's fees and costs incurred in this case. (Doc. No. 11-9 (Declaration of Christopher Wido).)

**II.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55 governs default and default judgment. Default has been entered by the Clerk against defendants pursuant to Rule 55(a). (*See* Doc. Nos. 7.) Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted).

Under Rule 55(b)(2), the Court may enter default judgment without a hearing, but may conduct a hearing if the Court needs to: (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegations by evidence; or (4) investigate any other matter. In this case, the Court has examined the record before it and plaintiffs' submissions in support of their motion for default judgment and concludes that a hearing is not necessary to rule upon the motion.

The decision to grant default judgment is within the Court's discretion. *See AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing, among authority, 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2685 (3d ed. 1998) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a).")). Thus, defendants' default does not automatically entitle plaintiffs to relief.

In order to rule upon plaintiffs motion, the Court must determine whether the factual allegations in the complaint deemed admitted by defendants' default, and reasonable inferences derived therefrom, are sufficient to satisfy the elements of plaintiffs' legal claims for which they seek default judgment. *See Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016) (finding even though defendant has defaulted, the court must determine whether factual allegations accepted as true state a claim for relief with respect to the claims for which plaintiffs seek default (citation omitted)); *see also Kwik–Sew Pattern Co. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) ("[A] court may not enter default judgment upon a legally insufficient claim." (citations omitted)). Legal conclusions in the complaint are not deemed admitted by a defendant's default.

In addition, "[a]n entry of default judgment requires some affirmation that the person against whom the default judgment is obtained is not (1) 'an infant or incompetent person' who is unrepresented; (2) a member of the armed services who is entitled to protection against default pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 401 *et seq.*; or (3) an officer or agency of the United States." *Leach v. Lifeway for Youth, Inc.*, No. 1:07-cv-200, 2008 WL 1990390, at *1 (S.D. Ohio May 1, 2008) (citing Fed. R. Civ. P. 55(b), (c), (e); Advisory Committee Notes to Fed. R. Civ. P. 55, Supplementary Note.). As a for-profit corporation, Captain Friedt Tower is not a minor, incompetent person, or subject to the Soldiers' and Sailors' Relief Act of 1940. *See Zinganything, LLC,* 2016 WL 362359, at *2 (citing *Hitachi Med. Sys. Am., Inc. v. Lubbock Open MRI, Inc.*, No. 5:09-cv-847, 2010 WL 4638057, at *1 (N.D. Ohio Nov. 5, 2010) ("As corporations, the Defaulting Defendants are clearly not infants or incompetent persons.")). (*See* Doc. No. 1 ¶ 7.) Additionally, there is nothing in the record to support a finding that Friedt is incompetent, subject to the Soldiers' and Sailors' Relief Act of 1940, or otherwise incapable of being sued in federal court.

### III. DISCUSSION

By defaulting, defendants are deemed to have admitted all of plaintiffs' well-pleaded factual allegations as to liability. *AF Holdings*, 976 F. Supp. 2d at 929 ("Once the Clerk has entered a default against a defendant, the Court must treat all well-pleaded allegations in the Complaint as true.") (citing *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007)). To be well-pleaded, the complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *See Reid v. Herrera Harvesting LLC*, No. 2:17-cv-229, 2020 WL 247349, at *1 (E.D. Tenn. May 13, 2020) (applying Fed. R. Civ. P. 8(a) to a complaint for which plaintiff seeks default

6

judgment (quotation marks and citations omitted)).

### A. Liability Under the FLSA

Plaintiffs seek to recover damages on their FLSA claims for unpaid overtime and unpaid minimum wages.[2] The Court finds that defendants were covered employers under the FLSA. Captain Friedt Tower was an enterprise within the meaning of 29 U.S.C. § 203(r), in that it had employees engaged in commerce. *See Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 802–03 (N.D. Ohio 1996). (Doc. No. 1 ¶ 16.) Additionally, the Court finds that Friedt is jointly and severally liable with Captain Friedt Tower under the FLSA. "The Sixth Circuit uses the 'economic reality' test to determine 'whether a person is an employer responsible for FLSA obligations.'" *Becker v. Sam Gildersleeve & Son Plumbing, Inc.*, No. 1:20-cv- 2359, 2021 WL 4348260, at *1 (N.D. Ohio Sept. 24, 2021) (quoting *U.S. Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995) (further quotation marks and citation omitted)). "Under this test, 'a corporate officer who has operational control of the corporation's covered enterprise is an employer under the FLSA, along with the corporation itself.'" *Id.* (quoting *Cole Enters.*, 62 F.3d at 778 (further quotation marks and citation omitted)). Plaintiffs allege that "Friedt is and was . . . the president, co-owner, and/or principal of [Captain] Friedt Tower[]." (Doc. No. 1 ¶ 8.)

The FLSA generally requires employers to pay employees an established hourly minimum wage for up to 40 hours per week and overtime compensation of one and one-half times the employee's regular rate of pay for hours worked over 40 in a work week. 29 U.S.C. §§ 206(a),

---

[2] In their motion, plaintiffs seek damages exclusively as to their FLSA claims and have failed to advance any arguments regarding judgment as to their state law claims. Plaintiffs' state law claims are hereby dismissed.

207(a)(1).[3] An employer who violates the minimum wage and overtime compensation provisions of the FLSA is liable to the employee for the unpaid wages, plus liquidated damages equal to the amount of those unpaid wages. 29 U.S.C. § 216(b).

As set forth above, each plaintiff has alleged defendants failed to pay them an established hourly minimum wage for up to 40 hours per week for each week they worked for defendants. Plaintiffs have also adequately alleged that they were not paid overtime compensation at one and one-half times their regular rate of pay for hours worked over 40 in a work week, and that the hours they worked in certain weeks exceeded 40 hours.[4] They have, therefore, established defendants' liability for violations of the FLSA.

**B. Damages Under the FLSA**

While a plaintiff's well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, the same is not true for damages. *Ford Motor Co.*, 441 F. Supp. 2d at 848 (citing *Thomson v. Wooster*, 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105 (1885)); *Nat'l Satellite Sports, Inc. v. Mosley Entm't, Inc.*, No. 01-cv-74510, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2022) (the allegations of the complaint regarding the amount of damages are not controlling (citations omitted)). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot.*, No. 3:11-cv-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D.*

---

[3] While the federal minimum wage applicable to the present case is $7.25 per hour, § 34a of Article II of the Ohio Constitution provides that employees must be paid the higher Ohio minimum wage, and not the federal wage. In 2020, the applicable minimum wage was $8.70 per hour; in 2021 it was $8.80 per hour.

[4] Moreover, each plaintiff has alleged sufficient facts to establish that they were non-exempt from the overtime requirements of the FLSA. (*See* Doc. No. 1 ¶¶ 21–28 (McMasters); 42–50 (Palmer); 64–71 (Williams); 84–92 (Wright); 106–13 (Johnson).)

*Miller Enterpr.*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

Given that defendants defaulted in this action, plaintiffs complain that they do not have access to their pay and time records, which were in defendants' exclusive control, and only McMasters managed to make an independent and contemporaneous diary of the hours he worked for defendants. Nevertheless, to award monetary damages in this case, the Court need only find that plaintiffs have provided sufficient evidence to allow the finder of fact to make just and reasonable inferences as to the time they worked. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946) ("[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has caried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference.").

Here, plaintiffs have come forward with sworn testimony establishing the typical weekly schedules they worked during their respective tenures with defendants.[5] From this testimony and time records created by McMasters, counsel prepared a damages spreadsheet, which details the number of hours each plaintiff worked per week and the minimum wage and overtime

---

[5] This is in addition to the contemporaneous diary that McMasters kept documenting the hours he worked. (Doc. No. 11-1, Ex. A, at 4.) In his declaration, he further averred that he worked "alongside" Johnson, and that the men "worked the same hours." (Doc. No. 11-1 ¶¶ 7–8.) Thus, his diary represents at least some evidence as to the hours both men worked.

compensation they are owed. (Doc. No. 11-9 (Declaration of Christopher Wido) ¶ 4, Ex. A.)[6] The Court finds this evidence is sufficient to establish the number of hours plaintiffs worked for defendants without compensation in violation of the minimum wage requirements of the FLSA, as well as their entitlement to overtime compensation under the FLSA. *See, e.g., Moran v. Al Basit LLC*, 788 F.3d 201, 205–06 (6th Cir. 2015) (permitting plaintiff-employee to establish his FLSA damages by demonstrating the hours he typically worked during the course of his employment for defendant-employer).

The Court also finds that each plaintiff is entitled to liquidated damages equal to the amount of unpaid wages and overtime they are owed because there is no evidence to suggest defendants acted in good faith. *See* 29 U.S.C. §§ 216(b), 260. The amended spreadsheet prepared by plaintiffs' counsel also records the liquidated damages owed to each plaintiff. (*See* Doc. No. 11 at 10.)

Based on the foregoing, the Court finds that plaintiffs are entitled to monetary damages as follows: $4,005.32 (McMasters), $4,788.52 (Johnson), $3,828.00 (Palmer), $4,243.00 (Williams), and $4,243.00 (Wright). (Doc. No. 11, at 10.)

### C. Attorney's Fees and Costs

The FLSA also allows a plaintiff to recover reasonable attorney's fees and costs. 29 U.S.C. § 216(b). To determine reasonable attorney's fees, a district court "begins by determining 'the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an

---

[6] Portions of the spreadsheet are purportedly reproduced in the motion for default. (*See* Doc. No. 11, at 10 (quoting Doc. No. 1-91, Ex. A.) However, the calculations that appear in the spreadsheet are not consistent with those in the motion. A side-by-side comparison reveals that the spreadsheet prepared by counsel contains several errors that have been corrected in the motion. First, it appears that the wage calculations for McMasters and Johnson were erroneously based on the 2020 minimum wage rates, even though these men were employed by defendants in 2021. Second, both Palmer and Johnson are missing calculations for one week of employment. (*See* Doc. No. 11-9, Ex. A.) For these reasons, the Court relies on the amended calculations in the motion for purposes of awarding damages.

attorney, multiplied by his court-ascertained reasonable hourly rate.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)).[7] To prove that the purported fees are reasonable, the requesting party must provide enough evidence "supporting the hours worked and rates claimed." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

In support of their request for attorney's fees and costs, plaintiffs provide the declaration of their attorney, Christopher Wido. (Doc. No. 11-9.) The declaration details the courts in which counsel is admitted to practice, his experience chairing similar FLSA cases, prior decisions awarding counsel attorney's fees and the hourly rates approved by those courts, and a description of the legal services provided in this case. Further, appended to the declaration in support of fees and costs are the following: plaintiffs' fee agreements (Ex. B); the Ohio State Bar Association's ("OSBA") Report, *The Economics of Law Practice in Ohio in 2019, A Desktop Reference* (Ex. C); and electronic time sheets (Ex. D).

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citation omitted). A district court may consider "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar

---

[7] The fee may then be adjusted by considering: (1) time and labor; (2) novelty and difficulty of the case; (3) skill necessary; (4) the extent the attorney is precluded from working on other matters; (5) the customary fee; (6) whether the fee is fixed or continent; (7) the time limitations; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation, and ability; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 430, n.3, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (citation omitted).

fee requests." *Waldo*, 726 F.3d at 821–22 (quotation marks omitted).

According to Wido's declaration, plaintiffs seek an hourly rate of $375.00 for their counsel's services. (Doc. No. 11-9 ¶ 25.) Such an hourly rate is consistent with awards that Wido has received in similar FLSA cases, and the Court finds that such a rate is appropriate for an attorney with Wido's experience and expertise in FLSA law. (*See id.* ¶¶ 11–15.) Additionally, this rate is also in line with hourly rates awarded in other FLSA default cases in the greater-Cleveland area. *See, e.g., Harrington v. Plehn-Dujowich*, 1:21-cv-960, 2022 WL 462815, at *9 (N.D. Ohio Feb. 15, 2022) (granting $375 per hour). The Court, therefore, finds that $375.00 represents a reasonable hourly rate.

As for the number of hours expended in this litigation, Wido avers that he spent 41.30 hours on this matter. (Doc. No. 11-9 ¶ 16.) The summary of the legal services he performed, augmented and supported by his firm's time sheets, demonstrates that these services were the kind that competent counsel would be expected to perform in litigating this type of case. (*See id.*, Ex. D.) Moreover, the Court finds that the number of hours expended on each task to be reasonable in light of the nature of the litigation and the posture of the case at judgment.

Multiplying the reasonable hourly rate of $375.00 by the number of hours expended in this litigation (41.30), the Court arrives at an award of reasonable attorney's fees of $15,487.50. Plaintiffs also seek costs totaling $710.00, consisting of the filing fee and administrative costs. (Doc. No. 11-9 ¶ 26.) The Court finds these costs to be reasonable and supported by the record. Accordingly, the Court awards attorney's fees and costs in the amount of $16,197.50.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for default judgment against defendants is

GRANTED on plaintiffs' FLSA claims, and the remaining claims in the complaint are DISMISSED. Plaintiffs are AWARDED $21,107.84 in damages as follows: McMasters is awarded $4,005.32, Johnson is awarded $4,788.52, Palmer is awarded $3,828.00, Williams is awarded $4,243.00, and Wright is awarded $4,243.00. Plaintiffs are also AWARDED $16,197.50 in attorney's fees and costs, plus interest from the date of the judgment. This case is closed.

**IT IS SO ORDERED**.

Dated: November 21, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**